Smyser J.
The Baltimore and Ohio Railroad Company prosecutes error in this court to reverse a judgment recovered against it and the defendant, the Hocking Valley Railroad Company, in the court of common pleas of this county.
McPeek filed his petition in that court against the Baltimore & Ohio Railroad and the Hocking Valley Railroad Companies, claiming damages against them jointly,for injuries sustaind by reason of a collision with a certain train running on the track of the Hocking Valley Railroad Company. The railroad companies answered separately to this petition, and to these answers replies were filed, The case was tried to the jury upon the issues presented by these *88 pleadings, and a verdict was returnd in favor of McPeek against both companies. Motions for a new trial were interposed, overruled, and exceptions taken, and a bill of exceptions embodying all the evidence was likewise taken, and is before the court. Numerous errors are assigned in, the petition in error, twelve in number. The Hocking Valley R. R. Co., the defendant in error, files a cross-petition-in error assigning the same errors as the petition in error, except perhaps one, and for all purposes we will consider alone the petition in error.
The first error assigned and urged upon the attention of the court by tbs Baltimore & Ohio Railroad Company is the action of the common pleas court in overruling is motion to quash the service of summons, The summons was served on the Baltimore & Ohio R. R. Co., in Franklin county, Ohio. The motion is as follows:
“Now come the defendant herein, the Baltimore & Ohio R. R, Co., for the purpose of filing this motion, and for no other purpose whatever, and be shows to the court that this defendant corporation is not situated in Delaware county, Ohio,.nor is its principal oifi.ce or place of business located in said county; and, that no part of its-line of road is located into or through said county, and there is no property of or debts owing to this defendant in said Delaware county, and that it is not found therein. And this action is therefore improperly brought in the said' county of Delaware, and there is no authority for issuing’ summons herein to the sheriff of Franklin county, Ohio, and that there has been no legal service of the same upon-the defendant. This defendant, therefore, moves that saidf summons and the service thereof be quashed.”
This motion is duly verified by affidavit.
The correctness of the holding of the common pleas court involves the consideration of three sections of the Revised Statutes, 5027, 5031, 5085.
The plaintiff in error contends that under sec. 5027, it can not be sued in Delaware county. That section provides as follows:
*89 “An action against the owner or lessee of a line of mail stages, or other coaches, for an injury to person a property upon the road or line, or upoD a liability as carrier, and an action against a railroad company, may be brought in any county through or into which such road or line passes.”
The motion and the affidavit in support thereof, standing alone, would not warrant the action of the court in holding the service good.
The petition, however, charges a joint liability upon the Baltimore & Ohio R. R. Co., and the Hocking Valley R.R. Co.,and alleges that the Hocking Valley owned the road on which the accident complained of occurred, and alleges that “it was in Delaware county,” Now, under sec., 5027, the venue against the Hocking Valley R. R. Co. is properly laid in Delaware county. The common pleas court clearly had jurisdiction of the subject matter, and the jurisdiction of the Hocking Valley being beyond question, the common pleas court might possibly, by reason of that fact, have jurisdiction over the Baltimore & Ohio R. R. Co., even though the Baltimore & Ohio did not own or operate the road in question, and owned and held no property in Delaware county.
Sec. 5031 provides that every other action must be brought in the county in which the defendant resides or may be summoned, etc, But this section may or may not govern as to venue, depending entirely upon the case properly made.
The petition avers a joint liability against both companies. The jurisdiction of the common pleas court over the Hocking Valley is conceded. That railroad companies may be jointly liable, we think, is beyond question. 20 N. Y., 492; 34 Am., 49. It is not the office or function of the motion to quash the service, to attempt to dispute the averments in the petition as to the cause of action set forth in the petition,and, if this be true, we must look tó *90 tub statute for ’ authority to serve the Baltimore & Ohio R. R. 0o. with summons. It can scarcely be contended that if McPeek had a cause of action against the two railroad companies jointly, that he would be compelled to seek redress by separate actions against, them, in separate and distinct forums,. We think sec. 5038 furnishes the authority for bringing a defendant, foreign to the jurisdiction in which the suit is brought, into court. That section provides:
“When the action is rightly brought in any. county according to the provisions of chapter five of this division, a summons may be issued to any other county, against one or more of the defendants at the plaintiff’s request, etc.” ’
It will be observed that this can be done when the action is rightly brought, and if the action is rightly brought in Delaware county against the Hocking Valley R. R. Company, and the petition avers a joint liabiliy, as it does in this case, the common pleas court would acquire by the summons issued to the foreign county, as complete jurisdiction over the Baltimore & Ohio R. R, Co., as if that company owned and operated the rod-bed in Delaware county on which the accident occurred. We cite the 11th Ohio St., 374; 32 Ohio St., 595, in support of our views in this respect, The syllabus in the 11th Ohio St. is as follows:
“In order to give the court of common pleas jurisdiction in an action against a defendant, resident and served with process in another county than ■ that in which the suit is brought, under the 53rd and 58th sections of the code, the other defendant or defendants resident or served with process in the county in which the suit is brought, must have a real and substantial interest in the subject of the action adverse to the plaintiff, and against whom substantial relief is sought.”
The case in 32 Ohio St., was an action to recover dam *91 ages under the act requiring compensation for causing the death by wrongful act, etc. The action was begun in Cuyahoga county. Cunningham was served in Cuyahoga county, and Carrington and Casey, co-defendants, were not found and served in Cuyahoga county, but were served in Lucas county. The court held that Cunningham, Carrington and Casey were properly joined as defendants. The third paragraph of the syllabus is as follows:
“Where the allegations of the petition upon its face make a case in which all of the defendants are rightfully joined, and service is made on one or more in the county where suit is brought, and on the others in another county, the question of the jurisdiction of the court over the persons of the defendants served in such other county, must be raised by answer, under sections 87 and 89 of the civil code.”
The question of joint liability on the part of these two railroad companies could not be raised by motion, and the allegations of the petition in that respect must be taken as true, and, if so, the sections of the statutes, and the authority cited, would confer complete jurisdiction on the common pleas court, The motion to quash the service of the Baltimore & Ohio B. R. Co. was, therefore, properly overruled. If it should turn out, however,on the trial, that the Hocking Valley R. R. Co. was not liable, the common pleas court of Delaware county would possibly have no jurisdiction to render a judgment against the Baltimore & Ohio R. R, Co. This jurisdiction could only be acquir. ed in the manner already indicated,and depending upon the fact,of the Hocking Valley R.R. Co. being rightfully sued. The 11 Ohio St., and 32 Ohio St,, already cited, are conclusive upon this proposition.
The second error urged upon the court is that the petition does not state a cause of action. The petition is as follows: - ■ ■
“George M, McPeek alleges that'the defendant, the Col *92 umbus, Hocking Valley & Toledo R. R. Co., is a corporation duly oganized under the laws of the state of Ohio, and, on the 7th day of February, A. D. 1893, owned and operated a certain railway, known as the Columbus, Hocking Valley & Toledo Railroad, from Columbus,Ohio,through said county of Delaware, to Toledo, Ohio, with the tracks, cars, locomotives and the appurtenances thereto belonging, and was engaged in the business of carrying passengers over the same for hire and reward.
“Plaintiff further says that the defendant, the Baltimore & Ohio R. R. Co., is a corporation duly organized under the laws of the state of Maryland. Plaintiff further says that on the 7th day of February, A. D. 1893, the said defendants were jointly running and operating over the road of the first named defendant an excursion train consisting of a locomotive and several passenger cars, the property of said second named defendant, and said excursion train was run and operated by the employes and agents of the said the 0., H. V. & T. R. R. Co., and the B. & O. R.R.Co., jointly, and over the road of said first named defendant as aforesaid. Plaintiff further says that on said 7th day of February, A. D. 1893, at about the hour of 9 o’clock and thirty minutes A.M., he, together with his brother, James McPeek, was traveling in a buggy drawn by one horse upon the public highway leading from the village of Bell-point in said county of Delaware, to the city of Delaware, which crosses said railroad track near the city of Delaware, and while in the act of crossing the railroad track of said defendant, the C., H. V. & T. R. R. Co., he was struck by the locomotive of said defendant, the B. & O. R. R. Co., run by said defendants jointly as aforesaid,and thrown from his buggy, and without any fault on his part was seriously and permanently injured as follows: He was greatly bruised about his back, shoulders and neck. - The muscles and ligaments of his back were torn and stretched, and by reason thereof, his spine was injured, weakened, and curvature of the spine produced, and further the drum of his right ear and the parts of the same have become thickened, and by reason thereof, he has become almost entirely deaf in said aar. He further says that the train causing the accident, being the excursion train above men *93 tioned, was an irregular train, and in approaching said crossing was run with great speed, and omitted to give any signal by bell or whistle of its approach, and was not running upon any time fixed for trains passing that point; that the said plaintiff knew the time for trains, and knew that none were then due at that place, and relied upon that fact in part for safety. Plaintiff further says that the approach on said highway from the west, being the direction from which he was coming, is and was obscured by buildings so that persons traveling along the same cannot see or hear the trains on the railroad approaching the crossing until the trains are near the crossing. And he further avers that there was no sign-post at said crossing warning travellers to look out for the approach of trains. That by reason of the premises,the said plaintiff could not have avoided the-accident and injury by the exercise of ordinary care. That by reason of said injuries, the said plaintiff was sick, and greatly suffered for the period of three months and more, and has been permanently injured and disabled from performing work and labor, and has necessarily expended for physician’s and other services the sum of $ — —in all,to his damage in the sum of Twenty-Thousand Dollars ($20,000).
The gist of the plaintiff’s action is the negligence of these companies in operating the train named in the petition. A mere inspection, the most casual reading of this petition, will exclude every other theory of liability,
Now, what constitutes a good petition for damages on account of, or by reason’ of, negligence? The facts constituting the negligence complained of must be set forth so that the ultimate fact of negligence shall clearly appear from the complaint. Negligence must in some manner appear from the complaint. It is absolutely essential to allege what it is necessary to prove, to authorize recovery.
Does this petition meet this requirement? Bliss in his work on Code Pleading, sec. 210, says,
“The facts which are but the logical conclusion from other facts which must be stated, and the facts from which they are inferred are but evidence, not to be pleaded. But *94 a conclusion of law is not a statement of fact — is not a pleading. It may not be possible to formulate a definition or statement that shall fully describe what is meant by a conclusion of law, as to distinguish it from the ultimate fact.”
In Sec. 210:
“On the other hand, a general allegation of negligence is allowed; the negligence is the ultimate fact to be pleaded, and it is not a legal conclusion, as, that ‘the, defendant, by,’ etc., ‘did run and manage one of their cars in such a grossly careless, and negligent manner that,’ etc, or, the defendant, ‘whilst running their locomotive with,’ etc., ‘negligently struck,’ etc. The law draws the conclusion in both cases.
And again, in the same section:
“But on the other hand, negligence is not a term given by the law to certain conduct, but forms part of the act from which an injury has arisen. Negligence is the absence of care in doing an act; it is not the result of such absence, but the absence.”
The averments in the case are, he further says, that the train causing the accident, being the excursion train above mentioned, was an irregular train, and in approaching said crossing was run with great speed, and omitted to give any signal by bell or whistle of its approach, and was not running upon any time fixed for trains passing that point. And he further avers that there was no sign-post at said crossing warning travellers to look out for the approach of trains. In considering the question of the sufficiency of this petition, however, it must be borne in mind, that the railroad companies may be liable in a two-fold capacity: First: negligence jointly in the operation of their trains for which they may be required to respond in damages if injuries result, and which may be properly characterized “common law negligence”. Second: the companies may be liable for the omission of statutory duties imposed upon them, which gives rise to liability if in conse *95 quence of such omission injuries result. The acts alleged against the companies are, first, an irregular train; second, running with great speed; third, ommission to give signals by bell or whistle; fourth, the train was not running'on a time fixed for trains to pass the point in question where the accident occurred; fifth, no. sign-post at the crossing to warn travellers of the approach of the locomotive. There is a total absence of any averments of negligence in respect to any of these facts, separately; nor, is there any averment of the ultimate fact of negligence taken from these facts collectively. Take the facts alleged, the fact of an irregular train, great speed, and not being scheduled at the time of the accident, how can a naked statement of these facts be a predicate for a recovery on the ground of negligence in the absence of proper averments? To call a train irregular in the absence of other averments is meaningless. What duty did these companies owe McPeek, and to the public, that would preclude them from running an excursion train, or running a train with great speed, or at a schedule as they, the companies, might seem fit. Their right to so manage and operate their trains as their business may require and necessitate, cannot be questioned provided always, that they shall not be guilty of negligence.
If they owed a duty in the respects named to McPeek, and failed, the companies are entitled to be advised of their dereliction. Not’ only that, but it is incumbent upon him to allege the duty they did owe as a predicate for recovery.
The same is true as to the rate of speed, sign boards and signals, etc. The manner in which these companies failed in their duty toward McPeek should be set out. Negligence must in some way be made to appear. And there is a conspicuous absence of any averment in this petition that they were in any manner negligent. But it is urged in *96 favor of the petition that the words, “that by reason of the premises,’’were an averment sufficient to charge the company with liability for the accident, and supply the ordinary averment of negligence wanting in the petition. Perhaps this might be true if the words related to the specific acts set forth in the petition, but such a construction, even the most liberal construction, will not justify such a conclusion. It will be observed that the petition recites that the approach on said highway from the west, being the direction from which the plaintiff was coming, is and was so obscured by buildings, that persons traveling along the same cannot see or hear the trains on the railroad approach the crossing until the trains are near the crossing. “That, by reason of the premises, the said plaintiff could not have avoided the accident and injury by the exercise of ordinary care. ” These words were not intended by the pleader to charge the result of the collision upon the railroad companies, but were intended solely to excuse McPeek from the consequences of the collision, and to relieve him from the imputation of contributory negligence. Their only meaning,standing as they do in this petition, is equivalent to saying that the accident occurred without fault on his part, which was a necessary averment in his case. See 32 Ohio St., 66; 44 Ohio St., 51; 31 Ohio St., 555; 45 Ohio St., 484; 28 Ohio St., 340.
The case in 45 Ohio St., is not decisive of the question made here, but is very suggestive that, when negligence is properly charged, as to what facts may be proven under a proper charge. On page 485 the court says:
“The contention of counsel presupposes that no act of negligence can be proved, except it be alleged in the petition. This position in untenable. The allegation in a pleading that the party complained against negligently committed the particular act which led to the injury whosp redress is sought, furnishes the predicate for proof of all such incidental facts and circumstances, both of omission and commission, as fairly tend to establish the negligence of the primary fact complained of.”
*97 And again, page 486:
“To plead specially the facts and circumstances from which the negligence could be inferred, would be to plead evidence instead of facts.”
In the Rathgeb case, page 72, 32 Ohio St., the court says:
“Before, therefore, plaintiff can recover, because signals were not given, he must cause it to appear that this failure of duty brought about the disaster.”
And it is a fair inference from these authorities to say, that if it was necessary to make it appear, there must be an averment that the omission occasioned the injury. But there is another view to be taken of the sufficiency of this petition. The statute imposes some duties upon the railroads, and likewise, some liabilities for failure to observe or perform such duties. Sections 3323, 3336, and 3337 imposes such duties.
Section 3323 requires railroad companies to erect at all points where its road crosses the public road, at a sufficient elevation from such public road to admit of the free passage of vehicles of every kind, a sign, with large and distinct letters placed thereon, to give notice of the proximity of the railroad, and warn persons to be on the look-out for the locomotive; and, a company which neglects and refuses to comply with this provision,shall be liable in damages for all injuries which occur to persons or property from such neglect or refusal.
Section 3336 required the company to have a bell on the engine and a steam whistle, and requires the engineer or.person in charge of the engine in motion approaching a crossing,to'ring the bell and sound the whistle, etc.
Section 3337 imposes a liability upon the engineer or person in charge of the engine, for failure to comply with the provisions of section 3336, and provides further, that the company in whose employ such engineer or person in charge of an engine is, as well as the person himself, shall be liable in damages to any person or company injured in person or property by such neglect or act of such engineer or person.
*98 If these companies in the operation of this train, or the persons in charge of the train, failed to observe these statutory requirements, the companies would be liable to McPeek if such failure caused his injury. Such ia the plain reading of the statutes. ] But, in order to entitle McPeek to recover by reason of"such)failure,he must aver that such negligence or failure caused his injury. 32 Ohio St., 66; 31 Ohio St., 555. The last case cited is very much in point. The syllabus is:
“In an action to recover damages resulting to domestic animals from the failure of a railroad company to construct and maintain good .and sufficient fences along the line of its road, as required by the act of April 26, 1871, (68 Ohio Laws, 78), the facts upon which the company’s liability depends must bs stated in the petition, and, if not admitted, must be established by the proof.”
The petition is set out injthis case, and we think it is a much stronger case as stated than the one under consideration. In deciding the case Judge Boynton says:
“The case seems to have been tried on the theory, as respbcts this ground of liability, that neither an averment of the facts, nor the introduction of evidence was necessary to establish the right to recover. There was an entire absence of both.
“The only allegation in the petition on the subject is,that the company was, by law, bound to fence and inclose said track,and that in consequence of the neglect and failure of the defendant to fence and inclose the same, the mare entered said track without difficulty. It is not alleged that the injury resulted through want or insufficiency of such fence, nor is there any statement of facts upon which the liability of the' company arising from the failure to build and maintain such fence depends.”
The case in 32 Ohio St., 66, is much like the case under consideration. On page 72 the court says,
“It is evident from this language that thejfailure to give *99 signals must have occasioned the accident, that is, must have been the proximate cause of it, before recovery can be had. The injury must happen ‘by neglect’ of the engineer. ”
And we think that the proximate cause must be averred. There being no such averment in this petition, we are constrained to hold that it does not state a cause of action. We áre strengthened in our conclusion by an examination of many authorities, not only in Ohio, but elsewhere. With unanimity in all cases we have examined the averment of negligence appears. Two well considered cases directly in point are P., C. & St. L. R. R. v. Coon, 104 Indiana, 64; Chicago & Northeastern R. R. v. Miller, 46 Michigan, 532.
At the conclusion of the plaintiff’s testimony, the railroad companies asked the court, by separate motions, to direct a verdict in their favor. These motions are not predicated on the ground that there was no evidence to authorize a verdict. That would involve the scintilla rule, and courts and counsel are familiar with that rule, to-wit: if there is any evidence tending to support the claim made,it would be error to direct a verdict, but the cause must be submitted to the jury. The contention, however, on behalf of the motions is, that conceding negligence proven against the companies which,standing alone,might warrant a verdict against them, that the plaintiff's own evidence clearly established such contributory negligence as to necessarily preclude a recovery. That upon the facts as proven at the conclusion of the plaintiff’s case, the force and effect of which was admitted by the motions, there was no room for differences of opinion among reasonable men as to the inference to be drawn from such facts. That being true, it was the duty of the court, as a matter of law, to direct the jury. Now, if the facts proven and admitted were as claimed if there could be no difference of opinion; if reasonable men could not fairly draw different conclusions from these facts, and they show *100 ed contributory negligence on the part of McPeek so as to preclude a recovery, it was error in the court not to accede to these requests asked for by the motions of the railroad companies. The rule is so familiar that it is needless to cite authority in support of this contention.
In the consideration of this alleged error, we assume that at the conclusion of the plaintiff’s testimony the following facts against the companies were clearly established: First, high rate of speed of the train: Second, no signal of approach by bell or whistle: Third, the train was an irregular one, not scheduled to pass that point at the time it did: Fourth, no sign-board at the crossing to warn approaching travellers. From these facts,standing alone,the jury might be warranted in finding the company guilty of neglect.
What are the facts established by the plaintiff’s own evidence against himself, about which there could be no dispute and from which but one inference could be drawn? This was a grade crossing. McPeek and his brother were traveling on the public highway toward the crossing in a northeasterly direction. They were in a top buggy with side curtains on. McPeek was driving. His horse was under control. That he approached the railroad track and crossing on a trot at the rate of six or seven miles per hour. That he was familiar with the crossing. That he knew the scheduled time of the trains, and that there was no train scheduled at the time he attempted to cross. That for quite a distance as he approached the railroad track and crossing, along the highway that he travelled, the railroad track and crossing could be seen. That the Tracy house to the right of the road he was travelling, momentarily obstructed his view of the track and train. That before he reached the Tracy house, he leaned forward and looked to the right for the train. He neither saw nor heard a train approaching, That after he passed the Tracy house, he neither looked nor listened. The wind was blowing in the direction in which *101 he was traveling. MePeek had neither defective eye sight or hearing. It was broad daylight. That after passing the Tracy house, approaching the track and crossing, the view of the railroad and approaching train was unobscured. MePeek, himself, testified that as he approached the track he could see to the right, possibly a quarter of a mile. That the train occasioning the injury was both seen and beard by other persons at the time and place in question and, along the same road that MePeek was traveling approaching the crossing.
From these facts, what inferences are tobe drawn? Did Pe see and hear this train so as to enable him to avoid the accident? If not, why not? According to his own testimony, he had a view of the approaching train for a quarter of a mile. Had he exercised the most ordinary care he could not have failed to have seen and heard the train. It was not necessary even for him to stop to look and listen. Had he slackened the speed of his horse, leaned forward as he approached the track, as he could have done, for he did before he reached the Tracy house, it would have been utterly impossible for him not to have observed this train. That it was his duty to do this, admits of no doubt. This rule is too well settled in Ohio. It appears that he took no precaution for his own safety and in this case an allegation in connnection with the petition should be remembered which,if true, would increase the precaution on his part. He alleges in his petition that the view of the railroad and train was obstructed by intervening buildings. Knowing that fact,he must be correspondingly careful in his approach. To us it seems that he exercised no care, whatever. In ' support of the view we take as to his duty in approaching this track under the circumstances, see 32 Ohio St., 66; 24 Ohio St, 631; 40 Ohio St., 338; 28 Ohio St., 340; and 8 Circuit Court Reports, 41.
We think that upon the plaintiff’s case, at the conclusion *102 of his testimony, the defendants were entitled to have the court direct a verdict in their favor, and in refusing to grant the request the court erred.
Another error urged upon us is the refusal of the court to direct the jury to answer a special interrogatory propounded to the jury which was in substance, “Could McPeek at a distance of thirty to forty feet from the crossing have seen the train approaching had he stopped to 'look and listen?” The answer to this interrogatory by the jury was, “Doubtful.” Immediately, the counsel for the company requested the court to ask the jury to retire and answer the interrogatory, claiming that the answer returned, was under the circumstances, no answer at all. Was this error? We think so. This question went to the very vitals of the case, and the companies were entitled to have it answered one way or the other. It was very apparent what the effect of a certain answer to this interrogatory would have been. We think the jury simply evaded an unpleasant duty. It appears from the record that the jury viewed the premises. They had an ocular demonstration as to whether or not McPeek could have seen the train approach had he stopped to look and listen. The undisputed evidence of all the witnesses was that for many feet — some putting it as high as one hundred and twenty feet — from the crossing down along the highway, a train approaching on the track could be seen for hundreds of feet.
For the reasons indicated the judgment will be reversed.